*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 18, 2015                    520081
_____

SHELDON B. STAUNTON et al.,
                    Respondents,

        v                                    MEMORANDUM AND ORDER

RICHARD B. BROOKS,
                    Appellant.
_____

Calendar Date:  May 1, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        Assaf & Siegal, PLLC, Albany (David M. Siegal of counsel),
for appellant.

        Hiscock & Barclay, LLP, Albany (David B. Cabaniss of
counsel), for respondents.

_____

Clark, J.

        Appeal from an order of the Supreme Court (Kramer, J.),
entered February 20, 2014 in Schenectady County, which, among
other things, denied defendant's motion for summary judgment.

        In 1984, defendant and plaintiffs, all medical doctors,
along with two other individuals, formed a partnership named
Medical Arts Associates, which owned real property containing
office and storage space located at 1401 and 1405 Union Street in
the City of Schenectady, Schenectady County.  In the same year,
defendant and plaintiffs formed a corporation called Neurologic
Associates of Northeastern New York (hereinafter NANNY), which
rented office and storage space at both 1401 and 1405 Union
Street from Medical Arts.  In 2005, defendant, who had become the
sole shareholder of NANNY, terminated plaintiffs from their

employment with NANNY.  Plaintiffs then formed a separate corporation called Schenectady Neurological Consultants (hereinafter SNC), which also rented space from Medical Arts.  In the spring of 2006, NANNY stopped renting space at 1401 and 1405 Union Street and, subsequently, SNC's rent was reduced, resulting in financial instability for Medical Arts.  As a result, 1405 Union Street was sold and 1401 Union Street was foreclosed upon and sold at auction.

Plaintiffs thereafter commenced this action, seeking, among other things, an accounting between the parties, a declaration of defendant's share of Medical Arts and monetary judgments against defendant for breach of contract and unjust enrichment.  Defendant subsequently moved for summary judgment, seeking, among other things, a determination that he withdrew as a partner from Medical Arts in July 2008, that SNC owed rent to Medical Arts, and that, in calculating defendant's share in the partnership, he is entitled to a credit relative to SNC's rental arrears plus $100,000 that he paid to avoid a deficiency judgment.  Defendant also moved pursuant to CPLR 4212 requesting that Supreme Court schedule an inquest before a referee to determine the value of his interest in Medical Arts.  Supreme Court denied defendant's motions and determined that plaintiffs had a right to a trial by jury.  Defendant appeals, and we affirm.

To prevail on a motion for summary judgment, the moving party must establish prima facie entitlement to judgment as a matter of law by adducing sufficient competent evidence to show that there are no issues of material fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Lacasse v Sorbello, 121 AD3d 1241, 1241 [2014]).  Only when the movant bears this burden and the nonmoving party fails to demonstrate the existence of any material issue of fact will the motion be properly granted (see Lacasse v Sorbello, 121 AD3d at 1241-1242).  As relevant here, the Medical Arts partnership agreement provides that a partner may compel the partnership to buy his or her interest in the partnership so long as the partner gives notice to the management committee along with a written appraisal assessing the fair market value for the transferring partner's share.  Within 10 days of receipt of the initial notice, the management committee is required to hold a meeting of the remaining partners

to decide whether to accept the transfer at the transferring partner's proposed rate (the transfer option), to convene an appraisal committee to get a second opinion on the value of the transferring partner's share (the appraisal option) or to sell the property in question and dissolve the partnership (the sale option). Thereafter, within three days of such meeting, the management committee must notify the transferring partner which option it has chosen and, if it chooses the appraisal option, within 10 days after electing this option, the remaining partners are to contact an appraiser who, together with the transferring partner's appraiser, will choose a third independent appraiser to form an appraisal committee. Within 30 days of the appraisal committee's formation, it must provide an appraisal of the fair market value of the share to be transferred and the management committee must thereafter hold a closing, upon notice to each partner.

In support of his motion regarding his withdrawal, defendant provided evidence of a letter that he sent to plaintiffs in March 2007 expressing his desire to withdraw from Medical Arts. Defendant does not dispute that he failed to submit an appraisal with this letter or that he waited until over a year later, in July 2008, to submit an appraisal. It was not until February 2009 that an appraisal committee was formed and appraised Medical Arts' assets. Given that both plaintiffs and defendant failed to follow the procedure set out in the partnership agreement, the agreement is susceptible to more than one reasonable interpretation – both that defendant withdrew when he submitted his appraisal and that he never withdrew because his appraisal was one year late – and, therefore, the withdrawal issue cannot be properly determined on a motion for summary judgment (see LHR, Inc. v T-Mobile USA, Inc., 112 AD3d 1293, 1297-1298 [2013]; Schaufler v Mengel, Metzger, Barr & Co., 296 AD2d 742, 743 [2002]).

Even if defendant had met his initial burden on the issue of his withdrawal, plaintiffs raised an issue of fact through their proof that defendant was considered a partner on Medical Arts' tax returns from 2006 to 2011. The tax returns listed defendant's share of Medical Arts' profit or loss as equal to that of plaintiffs through 2011. Moreover, plaintiff Sheldon B.

Staunton asserted that defendant never withdrew from the partnership because he never paid his share of the partnership's debt as required by the partnership agreement. Thus, we agree with Supreme Court that a factual issue exists as to whether — and, if so, when — defendant withdrew from Medical Arts, which requires an interpretation of the partnership agreement to decide if his actions constituted a withdrawal.

With regard to the issue of SNC's rental arrears, defendant adduced evidence that a lease for 1401 Union Street was signed between SNC and Medical Arts in April 2006, which provided that SNC was to pay $76,755.24 per year to Medical Arts. In September 2006, a second lease was signed between SNC and Medical Arts, which provided for an annual rent of only $43,845.60. Defendant submitted evidence that, rather than discuss the reduced rent with him, plaintiffs informed him that they intended to change the terms of SNC's lease and the rent was changed without his knowledge, which, according to defendant, constituted an unauthorized ultra vires action.[1] Even if we were to find that defendant established prima facie entitlement to judgment as a matter of law that plaintiffs' reduction of SNC's rent was outside of their authority, which we do not, plaintiffs nonetheless presented conflicting evidence to raise an issue of fact (see Martin v I Bldg Co., Inc., 126 AD3d 861, 862 [2015]). Specifically, according to plaintiffs, all three partners agreed to lower SNC's rent because they knew that SNC would move to a different location if Medical Arts did not do so. Moreover, Staunton asserted that defendant left Medical Arts in the lurch when he assured plaintiffs that he would keep his practice at 1401 Union Street and continue paying rent there, and then abruptly left the building and began practicing in the City of

_____

[1] We note that defendant presented undisputed evidence that he paid $100,000 to satisfy his personal obligation with regard to a deficiency judgment after 1401 Union Street was sold in foreclosure. Issues of fact preclude summary judgment on the issue of whether defendant is entitled to a credit for this payment inasmuch as a deficiency judgment was thereafter entered against plaintiffs for nearly $300,000 as a result of the same foreclosure.

Albany.  Staunton claimed that he and plaintiff Bruno P. Tolge were each forced to contribute nearly $35,000 of their personal funds to Medical Arts in an attempt to meet its expenses. Viewing the evidence in the light most favorable to plaintiffs, questions of fact remain as to whether, and to what degree, defendant agreed to the arrangement in the second SNC lease (see O'Neill v Pinkowski, 92 AD3d 1063, 1065-1066 [2012]; Nudi v Schmidt, 63 AD3d 1474, 1477 [2009]).

Finally, we agree with Supreme Court that plaintiffs are entitled to a jury trial.  In determining whether a party is entitled to a jury trial, "the relevant inquiry 'is not whether an equitable counterclaim exists but whether, when viewed in its entirety, the primary character of the case is legal or equitable'" (Moser v Devine Real Estate, Inc. [Florida], 42 AD3d 731, 736 [2007], quoting Cadwalader Wickersham & Taft v Spinale, 177 AD2d 315, 316 [1991]).  Here, plaintiffs seek equitable relief – an accounting of defendant's share of Medical Arts and an account stated between the parties – only for the purpose of determining the money judgment against defendant.  Therefore, Supreme Court properly determined that plaintiffs are entitled to a jury trial (see Moser v Devine Real Estate, Inc. [Florida], 42 AD3d at 737; Harris v Trustco Bank N.Y., 224 AD2d 790, 791 [1996]).

McCarthy, J.P., Egan Jr. and Lynch, JJ., concur.

ORDERED that the order is affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court