Innovative Municipal Products (U.S.), Inc., Plaintiff,

against
Central Equipment, LLC, and JAMES C. YONKERS, Individually and as General Manager of CENTRAL EQUIPMENT, LLC, Defendants. (And a Third-Party Action).


4073-13

O'Connor, O'Connor, Bresee & First, P.C.
Attorneys for Plaintiff
(Dianne C. Bresee, of counsel)
20 Corporate Woods Boulevard
Albany, New York 12211
Lombardi, Walsh, Davenport & Amodeo, P.C.
Attorneys for Defendants
(Paul E. Davenport, of counsel)
187 Wolf Road, Suite 211
Albany, New York 12205


Richard M. Platkin, J.

In this commercial action, defendants Central Equipment, LLC ("Central") and its general manager, James Yonkers, move pursuant to CPLR 3212 for summary judgment dismissing the amended complaint ("Complaint") filed by plaintiff Innovative Municipal Products (U.S.), Inc. ("Innovative") and for summary judgment on Central's counterclaims. Innovative opposes the motion and cross-moves pursuant to CPLR 3025 (b) for leave to amend the ad damnum clause of its Complaint.
BACKGROUND
Plaintiff Innovative is a company that markets and sells liquid road de-icing products to municipalities and government agencies, and defendant Central is a manufacturer of storage tanks and related equipment ("storage tanks") that are used to store and apply Innovative's de-icing products. From about 1999 until 2003, Innovative marketed Central's storage tanks to its customers, with Innovative's sales personnel receiving a 10% commission from Central on such sales. 
In or about 2003, Innovative's Director of Sales, third-party defendant Daren Crawford (sued as "Darin Crawford"), assisted in the development of the company's "Tank Agreement Program" ("Program"). Under the new Program, Innovative customers who signed a multi-year contract to purchase de-icing product were able to lease a storage tank from Innovative at no cost. At the end of the contract term, customers could purchase the tank from Innovative at a reduced cost or continue to lease the tank for a nominal annual fee upon a further agreement that only Innovative's products would be stored therein. 
At some point after the Program was implemented, Crawford approached Yonkers about reinstating the 10% commission on Innovative's purchases of Central's equipment. Yonkers agreed. Central thereafter paid directly to Crawford a 10% commission on each purchase, purportedly without Innovative's knowledge.
By early 2013, Innovative owed Central the sum of $46,211.89 on unpaid invoices.Innovative refused to pay these invoices, however, after it discovered the secret "kickback" agreement between Yonkers and Crawford. Innovative terminated Crawford's employment on May 9, 2013, at which time Crawford acknowledged receipt of "commissions" from Central in excess of $100,000.[FN1]

Innovative thereafter commenced this action against Central and Yonkers — but not Crawford — alleging claims of aiding and abetting breaches of a fiduciary duty, breach of contract, unjust enrichment, and fraud.[FN2]
 Essentially, Innovative claims that Central artificially inflated its prices while the kickback scheme was in place to cover the cost of the payments made to Crawford, which allegedly put Innovative at a competitive disadvantage in selling its de-icing products. In their answer, defendants asserted various affirmative defenses, and Central [*2]counterclaims for the balance due on the unpaid invoices.[FN3]

Discovery is complete, a trial-term note of issue was filed on September 27, 2016, and the jury trial of this action is scheduled to commence on April 3, 2017. 
MOTION FOR SUMMARY JUDGMENT
"To prevail on a motion for summary judgment, the moving party must establish prima facie entitlement to judgment as a matter of law by adducing sufficient competent evidence to show that there are no issues of material fact" (Staunton v Brooks, 129 AD3d 1371, 1372 [3d Dept 2015] [citations omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; S.J. Capelin Assoc. v Globe Mfg Corp., 34 NY2d 338 [1974]). If the movant fails to satisfy this initial burden, the motion must be denied, "regardless of the sufficiency of the opposing papers" (Alvarez, 68 NY2d at 324). But if the movant establishes a prima facie case, the burden shifts to the nonmoving party to demonstrate material issues of fact or legal defenses to the claims exist (id.; see Zuckerman v City of New York, 49 NY2d 557 [1980]).
A.Dismissal of the Complaint
Defendants do not deny making payments directly to Crawford, which they describe as "commission payments". Nonetheless, defendants argue that the Complaint must be dismissed because Innovative cannot prove that it suffered any damages as a result of such payments. Specifically, defendants rely on the deposition testimony of Crawford and Craig Baun, Innovative's president and CEO, to establish that Innovative simply incorporated the cost of the storage tanks into the price of the de-icing materials sold to its customers. Thus, even if Central inflated the price of the storage tanks by 10% to incorporate the cost of Crawford's "commissions" — an allegation that defendants deny [FN4]
— Innovative was not damaged because it recouped the increased costs from its customers.
Even assuming that each of the causes of action alleged in the Complaint requires plaintiff to prove actual damages flowing from defendants' allegedly wrongful conduct,[FN5]
the Court concludes that Innovative's proof in opposition to the motion suffices to raise triable issues of fact.
Chad Bauder, who currently serves as Innovative's sales manager, submits an affidavit in which he denies defendants' allegation that Innovative simply passed on to its customers all of the costs of the storage tanks, including any increased costs attributable to defendants' alleged misconduct. According to Bauder, "[i]n the majority of tank contracts, plaintiff did not increase the cost of the product at all. Rather, plaintiff would allocate 20 cents per gallon of liquid product sold to the customer to paying off the cost of the equipment within the contract term" (Bauder Aff., ¶ 3).[FN6]
In such cases, Innovative's profit margin was reduced throughout the term of the tank contract, with the expectation that normal profit margins would return "once the contract term ended and the tank had been fully depreciated" (id.).
Bauder also explains that any increase in the cost of the storage tanks "resulted in an increase in the number of gallons that [Innovative's] customer had to buy to make the deal work" (id., ¶ 6). In that connection, Bauder claims that "Crawford often supported tank deals that . . . were doomed from the start to be unprofitable, because in most cases, the customer would never purchase enough product to carry the cost of the tank" (id.).[FN7]
Bauder also asserts that when he expressed concerns to Crawford about certain customers being unable to meet their minimum purchase obligations, Crawford informed him "that it was more important to get the tanks in place" (id.). According to Bauder, all of these factors negatively affected Innovative's profit margin (id., ¶ 8).
In reply, defendants first emphasize that the averments in Bauder's affidavit are inconsistent with his deposition testimony. Nonetheless, "a court may not assess credibility on a summary judgment motion unless it clearly appears that the issues are not genuine, but feigned" (Dillenbeck v Shovelton, 114 AD3d 1125, 1127 [3d Dept 2014]), and the damages issues raised by the Bauder affidavit do appear to be legitimate. Accordingly, while the inconsistencies between the deposition testimony of Innovative's employees and their affidavit testimony are proper matters for cross-examination at trial, the Court does not believe this is a case where plaintiff's affidavits should be disregarded.
Defendants further contend that the new proof adduced by Innovative shows, at best, that "the true source of [its] damages was not an alleged 10% increase in the cost [of the tanks] — but a poor business plan, and the Plaintiff's business decision not to take any action against its customers who were not complying with their contracts" (Davenport Reply Aff., ¶ 12). Again, while this may be a legitimate argument for trial, the Court's role on a motion for summary judgment is issue identification, not issue resolution (see Tanzman v La Pietra, 291 AD2d 703, 705 [3d Dept 2002]). Viewing Innovative's proof in the light most favorable to plaintiff and giving it the benefit of all reasonable inferences, the Court concludes that Innovative has raised triable issues of fact as to whether it sustained actual damages proximately caused by defendants' [*3]allegedly wrongful conduct.[FN8]

Based on the foregoing, defendants' motion for summary judgment dismissing the Complaint must be denied.
B.Defendants' Counterclaims
By their counterclaims, defendants seek to recover $46,211.89 allegedly owed by Innovative on various unpaid invoices (Answer, ¶¶ 16-31). Innovative refused to pay these invoices after it discovered defendants' payments to Crawford. Citing Innovative's admission that it "had no issue with the quality of the equipment purchased" from Central, defendants argue that Innovative has no valid defense to the counterclaims.
As defendants recognize, however, the denial of the branch of their motion seeking the summary dismissal of the Complaint compels the denial of the branch of their motion seeking summary judgment on their counterclaims (Davenport Aff., ¶ 20). In particular, Central has not established as a matter of law that it fully performed its contractual obligations to Innovative (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052 [3d Dept 2009]). Moreover, if the proof at trial shows that the invoices upon which Central seeks to recover are the product of fraud or illegality,[FN9]
Central may be precluded from turning to the courts for recovery (see McConnell v Commonwealth Pictures Corp., 7 NY2d 465 [1960]; Riggs v Palmer, 115 NY 506, 511-512 [1889]).
CROSS MOTION TO AMEND THE COMPLAINT
Plaintiff seeks to amend the ad damnum clause of the Complaint to clarify that the amount of its claim for compensatory damages is not limited to $102,961, the total amount of payments made by defendants to Crawford. Defendants oppose the motion, claiming that they are unable "to defend against these new claims, as they do not know which purchases are claimed to be excessive" (Davenport Aff., ¶ 19). 
Courts generally should grant leave to amend the "ad damnum clause prior to trial where no prejudice accrues to the opposing party" (Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 21 [1981]). As Innovative points out, the body of the current amended complaint provides notice to defendants that the amount of the damages sought with respect to the first cause of action was not limited to the amount actually paid to Crawford (Complaint, ¶¶ 25-27). The Complaint also alleges that the payment arrangement between defendants and Crawford caused plaintiff to "suffer damages by being required to pay excess amounts for [e]quipment purchased [*4]from Central and by being placed at an economic disadvantage" in its sales to its customers (¶ 25). 
Under the circumstances, the Court is not convinced that defendants will be prejudiced by Innovative's amendment of the ad damnum clause.
CONCLUSION
Accordingly, it is
ORDERED that defendants' motion for summary judgment is denied in its entirety; and it is further
ORDERED that plaintiff's cross motion for leave to amend the ad damnum clause of the amended complaint is granted, and the ad damnum clause shall be deemed amended accordingly.
This constitutes the Decision and Order of the Court. The original Decision and Order is being transmitted to counsel for plaintiff; all other papers are being transmitted to the Albany County Clerk. The signing of this Decision and Order shall not constitute entry or filing under CPLR Rule 2220, and counsel is not relieved from the applicable provisions of that Rule.
Dated: Albany, New York
March 7, 2017
RICHARD M. PLATKINA.J.S.C.
Papers Considered:
Notice of Motion, dated December 1, 2016;
Affidavit of Paul E. Davenport, Esq., sworn to December 1, 2016, with exhibits A-J;
Defendants' Memorandum of Law, dated December 1, 2016;
Notice of Cross Motion, dated February 7, 2017;
Attorney Affirmation of Dianne C. Bresee, Esq., dated February 7, 2017, with exhibits A1-D1;
Affidavit of Gregory Baun, sworn to January 31, 2017, with exhibit A;
Affidavit of Chad Bauder, sworn to February 6, 2017, with exhibit A;
Plaintiff's Memorandum of Law, dated February 7, 2017;
Reply Affidavit of Paul E. Davenport, Esq., sworn to February 13, 2017.



Footnotes

Footnote 1:Nonetheless, Innovative paid Crawford $30,000 in severance pay, and it also forgave a $10,000 loan made to Crawford.

Footnote 2:Innovative consents to the dismissal of its fraud claim (Bresee Aff., p 3, n 3). Accordingly, the merits of that claim are not addressed herein.

Footnote 3:In addition, Central and Yonkers commenced a third-party action against Crawford, asserting claims for implied indemnity, unjust enrichment and fraud. Based upon Crawford's default in appearance, the Court ordered an inquest on damages following the conclusion of the first-party action.

Footnote 4:Innovative submits invoices showing that Central sold the same equipment to other customers for 10% less (Bresee Aff., Ex. C-1).

Footnote 5:In fact, settled law holds that "[n]ominal damages are always available in breach of contract actions" (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [1993], quoting Kronos, Inc. v AVX Corp., 81 NY2d 90, 95 [1993]). Moreover, defendants' moving papers do not address Innovative's prayer for a restitutionary remedy on its cause of action alleging unjust enrichment: the "profit [Central] received by reason of its unlawful agreement with Crawford" (Complaint, ¶ 39).

Footnote 6:Under the Program, Innovative's customers generally were obliged to make minimum purchases of de-icing material at a level sufficient to pay off the cost of the storage tanks over a three-year period using the 20 cents-per-gallon rate (Bauder Aff., ¶ 4).

Footnote 7:According to Bauder, the increased minimum purchase levels resulting from the allegedly inflated cost of the storage tanks also made the Program unworkable for smaller customers (id.)

Footnote 8:In view of this conclusion, the Court need not consider whether the payments made by defendants to Crawford can themselves be deemed a measure of pecuniary harm suffered by Innovative.

Footnote 9:"A person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee . . . without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars and causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars. Commercial bribing in the first degree is a class E felony" (Penal Law § 180.03).