Ryan Picard, MEGAN ADAMS, KEITH ODOM and KYRA THORNTON, on behalf of themselves and others similarly situated, Plaintiffs,

against
Bigsbee Enterprises, Inc. d/b/a/ MALLOZZI'S CLUBHOUSE AT WESTERN TURNPIKE, JRC OF ROTTERDAM, LLC, GOLDEN TOQUE, INC., MALLOZZI'S DISTRIBUTING LLC d/b/a MALLOZZI'S AT COLONIE COUNTRY CLUB, MORELLI IMPORTERS AND DISTRIBUTORS LLC, THE MALLOZZI GROUP LLC, JOHN MALLOZZI and JOSEPH MALLOZZI, Defendants.


1984-13

Pechman Law Group PLLC Attorneys for Plaintiff
(Louis Pechman and Gianfranco Cuadra, of counsel)
488 Madison Avenue, 11th Floor
New York, NY 10022
 
Joseph & Kirschenbaum LLP
Attorneys for Plaintiff
(D. Maimon Kirschenbaum and Denise A. Schulman, of counsel)
32 Broadway, Suite 601
New York, NY 10004 Jackson Lewis LLP
 
Attorneys for Defendants
(William J. Anthony and Clemente J. Parente, of counsel)
18 Corporate Woods Boulevard, 3rd Floor
Albany, NY 12211


Richard M. Platkin, J.

In this class action premised on alleged violations of New York Labor Law § 196-d, plaintiffs move pursuant to CPLR 3212 (e) for an order granting partial summary judgment with respect to certain issues of liability and damages. Defendants oppose the motion, contending that triable issues of fact preclude the grant of summary judgment.
BACKGROUND
According to the complaints filed in this consolidated class action, plaintiffs were servers at defendants' restaurants and catering venues through at least 2012 whose duties included banquet service. Throughout their employment, defendants allegedly charged banquet customers a mandatory 18% or 20% "service charge" or "service personnel charge." Plaintiffs allege that banquet customers reasonably believed this charge to be a gratuity, but defendants did not distribute these funds to servers, who were paid a flat hourly rate well in excess of New York State's minimum wage. When asked by customers if they received gratuities, plaintiffs allegedly were instructed by defendants to respond that they did.
Plaintiffs contend that defendants' retention of the "service charges" and "service personnel charges" violates Labor Law § 196-d, which provides, in relevant part: "No employer or [its] agent or an officer or agent of any corporation . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." In Samiento v World Yacht Inc. (10 NY3d 70 [2008]), the Court of Appeals held that a mandatory service charge falls within the ambit of Labor Law § 196-d "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees" (id. at 81).
In March 2010, the New York State Department of Labor ("DOL") issued an opinion letter ("2010 Opinion Letter") setting forth an "illustrative" list of factors that banquet operators should consider in assessing whether a reasonable customer would believe a particular service charge to be a gratuity. DOL later promulgated regulations, effective on January 1, 2011 ("2011 Regulations"), establishing "a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity" (12 NYCRR 146-2.18 [b]).
This action was commenced on or about April 4, 2013 by plaintiff Ryan Picard, suing on behalf on himself and a putative class of similarly-situated present and former employees of defendants. In a Decision & Order dated September 12, 2013, the Court denied defendants' motion to dismiss the class action allegations of Picard's complaint and the claims alleged against the two individual defendants: John Mallozzi and Joseph Mallozzi. As pertinent here, the Court concluded that the complaint sufficiently alleged that the individual defendants were Picard's "employer" within the meaning of Labor Law article 6.
Following limited discovery, Picard then moved for class action certification. In a Decision & Order dated June 24, 2014, the Court denied the motion on two grounds: (1) Picard failed to demonstrate the numerosity of the proposed class; and (2) Picard was not an employee of defendants prior to the effectiveness of the 2011 Regulations, and, therefore, his claims were not typical of the pre-2011 claims that he sought to litigate on behalf of the class.
Plaintiffs Megan Adams, Keith Odom and Kyra Thornton then commenced a new action in this Court, raising the same claims against the same defendants (Adams v Bigsbee, Index No. 3615-14). After limited disclosure in that action, plaintiffs moved for class certification, alleging that the new action cured the deficiencies that previously prevented class certification. They also sought to consolidate the new action with this case. Defendants cross-moved for dismissal of the action under CPLR 3211.
In a Decision & Order dated September 15, 2015, the Court granted the Adams plaintiffs' motion for class certification and consolidation, and denied defendants' cross motion to dismiss the complaint. The Court determined, among other things, that the Adams plaintiffs were entitled to the benefit of Picard's April 4, 2013 date of commencement and, therefore, could pursue claimed violations of Labor Law § 196-d from April 4, 2007 through December 31, 2012 ("Class Period"). The Court further found that considerations of commonality and predominance required the creation of two sub-classes: (1) servers employed by defendants from April 4, 2007 through December 31, 2010 ("Pre-2011 Subclass"); and (2) servers employed by defendants from January 1, 2011, when the 2011 Regulations took effect, through December 31, 2012 ("Presumption Subclass").
In denying the cross motion to dismiss in Adams, the Court also addressed defendants' contention that the "existence of a service charge, without any allegation that the defendant told customers that the service charge was a gratuity," fails to state a claim for relief under Labor Law § 196-d for the period prior to the effectiveness of the 2011 Regulations. The Court rejected this argument, holding as follows:
Plaintiffs allege that a reasonable patron would have understood the '20% Service Personnel Charge' to be a gratuity. Further, nothing in the banquet contracts 'provide[s] any explanation for the service charge.' And in addition to establishing policies that allegedly had the effect of misleading customers, plaintiffs allege that defendants directed them to represent to the patrons that they did receive gratuities. Plaintiffs echo these allegations in their affidavits and further aver that most customers understood the 20% service charge to be a gratuity, and the patrons who did leave gratuities left only a modest additional percentage, rather than the traditional 15 to 20 percent. Accordingly, the branch of the motion seeking dismissal of the pre-2011 claims is denied . . . .
The parties thereafter engaged in extensive discovery, and plaintiffs filed a trial-term note of issue on April 3, 2017. The representative plaintiffs now move for an order granting partial summary judgment to the class with respect to the following four allegations: (1) "[d]efendants violated [Labor Law] § 196-d throughout the Class Period with respect to private events whose invoices included a dollar amount for the service charge"; (2) the damages for such events total $3,148,903.14; (3) John Mallozzi was an "employer" of the class members under Labor Law article 6; and (4) the corporate defendants are jointly and severally liable for all damages under [*2]the "single employer" doctrine.
ANALYSIS
"To prevail on a motion for summary judgment, the moving party must establish prima facie entitlement to judgment as a matter of law by adducing sufficient competent evidence to show that there are no issues of material fact" (Staunton v Brooks, 129 AD3d 1371, 1372 [3d Dept 2015] [citations omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974]). If the movant fails to satisfy this initial burden, the motion must be denied, "regardless of the sufficiency of the opposing papers" (Alvarez, 68 NY2d at 324). But if the movant establishes a prima facie case, the burden shifts to the nonmoving party to demonstrate that material issues of fact or legal defenses to the claims exist (see id.; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
A. Liability as to Pre-2011 Subclass
1. Pre-2011 Legal Framework
The first sentence of Labor Law § 196-d provides that "[n]o employer or [its] agent or an officer or agent of any corporation . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee" (emphasis added). 
In an inter-office memorandum dated June 1, 1995 ("1995 Memorandum"), the Director of the Division of Labor Standards for DOL declared that "service charges will not be considered gratuities." Rather, "[s]ervice charges will be considered part of the gross receipts of the employer and . . . [are] not required to be distributed to employees" (id.). The memorandum did recognize, however, that prior DOL policy was to require a "fixed percentage service charge" for a banquet to be distributed to employees pursuant to Labor Law § 196-d "unless [the] service charge is clearly identified in writing as not being a gratuity" (id.). As defendants observe, DOL's change in position was consistent with the federal Fair Labor and Standards Act, which provides that a mandatory service charge imposed upon a banquet customer "is not a tip" (29 CFR 531.55 [a]).
Thereafter, DOL issued a series of opinion letters to employers from 1999 through 2006 reaffirming the interpretation of Labor Law § 196-d adopted in the 1995 Memorandum. DOL did caution, however, that if the employer or its agents lead the banquet customer to believe that the contract price includes a gratuity, those funds must be distributed to employees, even if the contract itself makes no reference to a gratuity (see DOL Opinion of March 26, 1999).
In reaffirming its position that service charges will be considered part of the gross receipts of the employer and not gratuities that must be distributed to employees, DOL observed that the New York State Department of Taxation & Finance ("DTF") considers a mandatory service charge to be income to the employer that is subject to sales tax: "For purposes of calculating sales tax, [DTF] also considers a service charge to be income to the employer, not a gratuity to the employee, except when three criteria have been met: the charge is separately stated in the bill; the charge is specifically designated as a gratuity; and all such charges are paid to the employee" (DOL Opinion of February 22, 2006; see 20 NYCRR 527.8 [l]).
It was against this backdrop that the Court of Appeals issued its 2008 decision in World Yacht. The defendant in World Yacht was a dining cruise operator accused of violating Labor [*3]Law § 196-d by retaining a separately itemized mandatory "service charge" of 20% that the defendant-employer allegedly described to inquiring customers as a gratuity that would be remitted to the plaintiff employees (10 NY3d at 74-75).[FN1]
 In reinstating plaintiffs' complaint, the Court of Appeals rejected the employer's principal contention that a payment must be voluntary, rather than mandatory, to constitute a gratuity: "Even if the charge is mandatory, and not subject to negotiation, when a complaint asserts . . . that a service charge has been represented to the consumer as compensation to defendants' waitstaff in lieu of the gratuity, such allegation is covered within the statutory language of Labor Law § 196-d" as a "charge purported to be a gratuity for an employee" (id. at 77, 79 [internal quotation marks omitted]). The Court further held that "the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer" (id. at 79).
In 2010, DOL issued an opinion stating that a banquet operator who adds an 18% or 20% service charge to customer's contract and states nothing further about the purpose of such charge would be required to distribute the funds collected to employees "because a 'reasonable patron' would believe an 18% or 20% service charge is for the service staff " (DOL Opinion of March 11, 2010). However, "[a]n employer may retain a portion of a service charge so long as the retention of that portion of the service charge is sufficiently disclosed so that the 'reasonable patron' would be aware that not all of the service charge will be going to the service staff" (id.). 
In this connection, DOL provided a non-exhaustive list of factors to consider when determining whether a reasonable customer would believe a mandatory charge is a gratuity.
In sum, a mandatory service charge may fall within Labor Law § 196-d "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees" (World Yacht, 10 NY3d at 81; see also Ramirez v Mansions Catering, Inc., 74 AD3d 490, 492 [1st Dept 2010]). The test is an objective one that looks to whether, given the totality of all relevant facts and circumstances, a reasonable "banquet patron would understand a service charge was being collected in lieu of a gratuity" (World Yacht, 10 NY3d at 79).
2. The Factual Record
Plaintiffs submit proof that defendant Bigsbee Enterprises, Inc. ("Bigsbee") operates Mallozzi's Restaurant, defendant FairwayView LLC ("Fairway") operates the Clubhouse at Western Turnpike ("Clubhouse"), defendant Mallozzi's Distributing LLC operated the banquet facility at the Colonie Country Club ("Colonie"), and defendant Mallozzi Group, LLC operates Treviso Restaurant. The restaurants operated by Bigsbee, Fairway and Mallozzi's Distributing were open throughout the entire Class Period, but Colonie did not open until 2012. 
Plaintiff Adams was employed by defendants from May 2009 to November 2011. She primarily was a server at Treviso, but also worked at the Clubhouse. Plaintiff Picard worked as a banquet server (and later a banquet captain) from March 2011 to December 2012. He worked [*4]primarily at Mallozzi's Restaurant, but also worked at Treviso, the Clubhouse and Colonie. Plaintiff Thornton worked as a banquet server from September 2010 through August 2011. She worked primarily at Mallozzi's Restaurant, but also worked at Treviso and the Clubhouse. Finally, plaintiff Odom was employed as a server at the Clubhouse, but also worked at Mallozzi's Restaurant, Treviso and Colonie. As banquet servers, each of the named plaintiffs was paid at an hourly rate well in excess of the minimum wage.[FN2]

Throughout the Class Period, Mallozzi's Restaurant, the Clubhouse, Treviso and Colonie (collectively "Banquet Facilities") charged private event customers a service charge of 18% or 20% of the total food and beverage charges. The Banquet Facilities kept the service charge monies and did not distribute them to employees. Some customers did leave tips or gratuities, and those funds would be distributed to the servers who worked the event. 
Potential banquet customers were provided three types of documents that referenced the service charge: (1) "packages," consisting of menus and the Banquet Facilities' policies; (2) contracts; and (3) invoices. Customers generally initiated the event booking process by contacting the Banquet Facilities via telephone or email. They spoke with a salesperson, who sent them packages describing the various menu options and facility policies. The packages state that prices are subject to an 18% or 20% "service charge," "service personnel" or "taxable service charge," except the prom and awards banquet menus for Treviso, which required a 20% "gratuity." In the menus, the service charge often appeared under the heading "Tax and Service Charge" or "Taxes & Service Fees." 
Customers who expressed an interest in booking a private event then were supplied a contract. Each facility used a single form contract each calendar year, and all of the contracts stated that there was an 18% or 20% "service charge" or "service personnel" charge and included a "service charge" line-item in the cost breakdown. There was no discussion or explanation of the charge, but some of the contracts stated that "Under NYS law the service charge is taxable."
A final invoice then was presented to customers when they paid the bill. These invoices set forth the amount of the service charge, typically identified as "Serv Chg" or "Service Charge," and did not include any description or explanation of the service charge.
Defendants did not instruct their sales staff to inform customers that the service charge was not a gratuity. Amanda Kruzinski, the only banquet salesperson who worked for defendants during the Class Period and still is employed by them, testified that she had not been given any instructions as to how to describe the service charge to customers. Plaintiffs also submit some of Kruzinksi's emails from 2011 and 2012,[FN3]
 which show customers and Kruzinski referring to the service charge as a "tip" or "gratuity." In many of the emails, Kruzinski advised customers that the quoted prices were "plus tax and gratuity," "plus gratuity" or "before taxes and gratuity." When customer emails referred to the service charge as a gratuity or tip, Kruzinski did not [*5]correct the customers, even though she understood the service charge to be "like a back-end charge . . . for like the setup fee of the event, the breakdown." On the contrary, several emails show Kruzinski advising customers that the "service charge is the gratuity." Plaintiffs also submit at least one email sent by a different employee of defendants to a customer that referred to the service charge as a gratuity, as well as an internal email reminding Kruzinski that the "gratuity" is subject to sales tax.
In their depositions, two of the named plaintiffs testified that they had been instructed by their managers on how to respond to customer questions regarding gratuities. Picard testified that he was told by Theresa White, the manager of his property, to advise customers that he did receive tips. However, Picard's practice was to tell customers that "[he's] been taken care of." Odom similarly testified that White told him "that when someone asked you about the gratuity, you tell them that it has been paid," and that customers who continued to ask about the service charge were to be directed to a manager. However, Odom testified that it was his practice to refer customer inquiries regarding the service charge to a manager.
c. Analysis
With respect to the Pre-2011 Subclass, the issue under Labor Law § 196-d is whether defendants "represented or allowed their customers to believe that the charges were in fact gratuities for their employees" (World Yacht, 10 NY3d at 81). The test is an objective one and looks to whether a reasonable "banquet patron would understand a service charge was being collected in lieu of a gratuity" (id. at 79; see Martin, 106 AD3d at 786).
There is no dispute that the Banquet Facilities imposed an 18% or 20% mandatory service charge on their customers during the Pre-2011 Subclass period. Further, defendants' written materials did not describe this service charge or state that the service charge was not a gratuity. And there is no proof that defendants advised customers, either orally or in writing, that the service charge was not a gratuity, or directed their sales personnel or servers to advise customers that the service charge was not a gratuity.
As defendants observe, however, there is no direct proof that the service charge was represented to banquet customers as a gratuity prior to 2011. All of the Kruzinski emails were sent or received beyond the Pre-2011 Subclass period, and the only proof of oral representations made to customers during such period comes from Odom's deposition testimony.[FN4]
 While Odom testified that at least one of defendants' managers directed servers to tell customers who asked about a gratuity "that it has been paid," Odom did not testify to actually giving this response to any inquiring customers. Rather, when asked what he would "say to the customer when they ask him about the service charge," Odom testified: "You have to see the manager about it." Moreover, the sparse testimony given by Odom and Picard regarding customer inquiries does not establish how frequently such inquiries were made by customers, how different servers carried out the manager's alleged directive, whether other facility managers gave different directives to their banquet servers, and how banquet customers reasonably would have understood the [*6]responses actually given to their inquiries.[FN5]

Nor is there any direct proof that defendants' customers actually understood the service charge to be a gratuity during the Pre-2011 Subclass period. In fact, some banquet customers left tips or gratuities for service personnel, which, viewed in a light most favorable to defendants, is evidence that customers may not have understood the service charge to be a gratuity.[FN6]
 Further, the fact that customers were conspicuously advised that the service charge was subject to New York State sales tax — a departure from the general rule governing tips or gratuities, which are not subject to sales tax — must also be considered in assessing the reasonable expectations of customers.
The Court concludes that partial summary judgment is inappropriate where, as here, the factual record is not fully developed and "more than one conclusion may be drawn from the established facts" (Friends of Thayer Lake LLC v Brown, 27 NY3d 1039, 1043 [2016]). Simply put, a rational trier of fact could, on the present record, come to differing conclusions as to how a reasonable consumer would have understood the mandatory service charge during the Pre-2011 Subclass period. Under the circumstances and in light of the general preference for permitting the trier of fact to decide questions of reasonableness, the branch of the motion seeking summary judgment as to liability with respect to the Pre-2011 Subclass is denied.
B. Liability as to Presumption Subclass
Pursuant to the 2011 Regulations, "[t]here shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity" (12 NYCRR 146-2.18 [b]). "A charge for the administration of a banquet . . . shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip" (12 NYCRR 146-2.19 [a]). Under the regulations, "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity" (id. [b]). "Adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests" (id. [c]).
As discussed previously, there is no dispute that the Banquet Facilities imposed a "service" charge on customers throughout the Presumption Subclass period. As a result, plaintiffs are entitled to the benefit of the rebuttable presumption that the service charge is "a [*7]charge purported to be a gratuity" within the meaning of Labor Law § 196-d. The burden therefore shifts to defendants to come forward with proof that, if credited, establishes by clear and convincing evidence that customers were notified that the service charge is not a gratuity and that such notification was sufficient to ensure that a reasonable customer would understand that the charge was not purported to be a gratuity.
The Court concludes that defendants' opposition to the motion fails to raise a triable issue of fact as to whether they provided "adequate notification" to customers that the service charge was not a gratuity. Defendants have not submitted proof showing that they complied with the 2011 Regulations, and, in fact, the only evidence in the record is to the contrary. The Kruzinski emails and her deposition testimony show that defendants' sales personnel referred to the service charge as a gratuity during the Presumption Subclass period and that they did not disclose the true nature of the charge to customers, even where customers expressed the belief that the charge was a gratuity. Under the circumstances, the Presumption Subclass is entitled to partial summary judgment on the issue of liability with respect to private events where the invoices included a dollar amount for the service charge.
C. "Employer" Liability
The second branch of plaintiff's motion for partial summary judgment seeks a determination that defendant John Mallozzi was an "employer" of the class members under Labor Law article 6.
Settled law holds that an individual does not bear civil liability for unpaid wages under Labor Law article 6 ("Article 6") merely by serving as an officer, shareholder or agent of a corporation (see Stoganovic v Dinolfo, 92 AD2d 729, 729-730 [4th Dept 1983], affd 61 NY2d 812 [1984]; Andux v Woodbury Auto Park, Inc., 30 AD3d 362, 362 [2d Dept 2006]). However, Article 6 does impose liability upon an "employer" (Labor Law § 190 [3]), and an officer, shareholder or agent of a corporation who qualifies as an "employer" may be subject to a civil suit on that basis (see e.g. Bonito v Avalon Partners, Inc., 106 AD3d 625, 625-626 [1st Dept 2013] [officer]; Wing Wong v King Sun Yee, 262 AD2d 254, 255 [1st Dept 1999] [shareholder]).
The term "employer" is broadly defined in Article 6 to include "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." In determining whether an individual may be subject to civil liability as an "employer" under Article 6, factors to be considered include whether the individual exercised control of the day-to-day operations of the business, including determination of the rate and method of payment of employees (see Bonito, 106 AD3d at 626). 
In contending that John Mallozzi was an "employer" of the class members under Labor Law article 6, plaintiffs rely primarily upon his deposition testimony. Mallozzi testified that he is an owner of the defendant corporations, along with his siblings. Throughout the Class Period, Mallozzi: exercised "some managerial authority" over the businesses and "assisted in the[ir] day-to-day operation"; hired, fired and disciplined employees; and played a role in setting employee compensation (including that of the servers). In addition, the managers of each of the Banquet Facilities, including the general managers, all reported to John Mallozi and his siblings, but "mainly [John] Mallozzi."
In a brief affidavit submitted in opposition to the motion, John Mallozzi states that class members were employees of the corporate defendants in this action. While acknowledging that [*8]he possesses "the authority to hire, fire and discipline employees," John Mallozzi asserts that he "did not routinely participate in these decisions." He further avers that he exercised oversight over the Banquet Facilities, but he "was not routinely supervising employees' duties or job performance." Moreover, decisions regarding the hiring, firing, discipline and compensation of employees were "made in consultation with others, including managers of each of the banquet facilities."
Even assuming that the limited proof adduced by plaintiffs suffices to demonstrate, prima facie, that John Mallozzi was an "employer" of plaintiffs as a matter of law, the Court concludes that triable issues of fact preclude the grant of partial summary judgment. In particular, the present record does not clearly establish whether John Mallozzi actually exercised control over the operations of the defendant businesses and the plaintiff employees to such a degree that he can fairly be deemed to be the "employer" of plaintiffs within the meaning of Labor Law article 6. Contrary to plaintiffs' contention, the mere fact that John Mallozzi had the ability to exercise authority over the day-to-day operations of the defendant corporations of which he was the principal owner and exercised such authority from time to time does not establish that the "economic realities" of Mallozzi's role were such that he should be deemed to be plaintiffs' employer (see Chu Chung v New Silver Palace Rests., Inc., 272 F Supp 2d 314, 318 n 6 [SDNY 2003]). Accordingly, this branch of the motion for partial summary judgment is denied.
D. Corporate Liability
Plaintiffs seek partial summary judgment determining that all corporate defendants are jointly and severally liable for all damages. "As originally promulgated by the [National Labor Relations Board], the single employer doctrine sets forth four criteria to determine whether two or more companies are sufficiently interrelated to constitute a single entity: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control of the entities in question. Of the four criteria, centralized control of labor relations is generally considered the most significant" (Matter of Argyle Realty Assoc. v New York State Div. of Human Rights, 65 AD3d 273, 278-279 [2d Dept 2009] [citations omitted]).
Plaintiffs submit proof with respect to each of the four factors. As to common management, plaintiffs cite the role played by John Mallozzi and his second-in-command, Jeanette Martin, who are said to have exercised managerial authority over all four Banquet Facilities. With respect to centralized control of labor relations, plaintiffs emphasize defendants' payment of overtime wages to employees who worked more than 40 hours per week across all of the Banquet Facilities, the fact that class members commonly worked at multiple venues as needed, and the use of identical employee handbooks. The same proof, together with proof of defendants' common bookkeeping and payroll systems and the substantially similar paperwork used by each of the Banquet Facilities, is evidence of the highly interrelated nature of the operations of the defendant corporations.
Defendants' opposition to the motion does not challenge the prima facie case put forward by plaintiffs. Nor do defendants submit any evidence or argument demonstrating a legal defense or triable issue of fact concerning application of the "single employer" doctrine. Under the circumstances, plaintiffs are entitled to partial summary judgment determining that the corporate defendants are jointly and severally liable for all damages.
[*9]E. Damages
The final branch of plaintiffs' motion seeks a determination that the damages for defendants' alleged violations of Labor Law § 196-d throughout the Class Period total $3,148,903.14 with respect to private events whose invoices included a dollar amount for the service charge.
Plaintiffs argue that the foregoing sum represents the total retained service charge for such events, and they submit spreadsheets identifying each of the invoices produced by defendants showing payment of a service charge during the Class Period and the total amount of such charges.[FN7]
 In opposition, defendants observe that plaintiffs were paid at a rate well in excess of the minimum wage, and they claim an entitlement to an offset against the damages claimed by plaintiffs with respect to such amounts. In reply, plaintiffs argue that there is no legal authority for such an offset and, in any event, defendants could not have paid plaintiffs the "tip credit" wage because they did not satisfy certain regulatory prerequisites.
The Court concludes that partial summary judgment on damages is not appropriate. As an initial matter, the proof of damages submitted by plaintiffs reflects the entire Class Period, but plaintiffs have not demonstrated that defendants are liable to the Pre-2011 Subclass. More fundamentally, the Court shares defendants' concern that the measure of damages requested by plaintiffs exceeds their actual damages. It seems inconceivable that defendants would have paid their banquet servers as much as $14 per hour if the servers also were to receive a mandatory 20% gratuity. In this connection, plaintiffs have not cited any legal authority affirmatively demonstrating the unavailability of an offset of the type requested by defendants under the facts and circumstances presented here.[FN8]
 Additionally, plaintiffs have failed to demonstrate that the recovery of damages in excess of their actual damages on a classwide basis is permissible under CPLR 901 (b), which prohibits recovery of a "minimum measure of recovery created or imposed by statute" (see Cox v Microsoft Corp., 8 AD3d 39, 40 [1st Dept 2004] [class action not prohibited where plaintiffs "seek only actual damages"]; accord Ridge Meadows Homeowners' Assn. v Tara Dev. Co., 242 AD2d 947, 947 [4th Dept 1997]; Super Glue Corp. v Avis Rent A Car Sys., 132 AD2d 604, 606 [2d Dept 1987]). 
CONCLUSION
Accordingly, it is
ORDERED that the Presumption Subclass is entitled to partial summary judgment on the issue of liability with respect to private events where the invoices included a dollar amount for the service charge; and it is further
ORDERED that defendants Bigsbee, Fairway, Mallozzi's Distribution and Colonie are and shall be jointly and severally liable for all damages awarded against them; and it is further
ORDERED that, except as specifically granted above, plaintiffs' remaining requests for relief are denied; and finally it is
ORDERED that the parties shall appear for a conference on June 26, 2017 at 10:30 a.m. [*10]to schedule further proceedings in this action, including a day certain for trial.
This constitutes the Decision and Order of the Court. The original Decision and Order is being transmitted to Joseph & Kirschenbaum LLP for filing and service; all other papers are being transmitted to the Albany County Clerk. The signing of this Decision and Order shall not constitute entry or filing under CPLR Rule 2220, and counsel is not relieved from the applicable provisions of that Rule.
Dated: May 23, 2017
Albany, New York
RICHARD M. PLATKIN, A.J.S.C.
Papers Considered:
Notice of Motion, dated December 19, 2016;
Affirmation of Denise A. Schulman, Esq., dated December 19, 2016, with attached Exhibits 1-30;
Affidavit of Jeanette Bowers, sworn to February 20, 2014;
Class Representatives' Memorandum of Law in Support of Their Motion;
Affirmation of Clemente J. Parente, Esq., dated February 17, 2017, with attached Exhibits A-R;
Affidavit of John Mallozzi, sworn to February 17, 2017, with attached Exhibit A;
Defendants' Opposition to Class Representatives' Motion;
Class Representatives' Reply Memorandum of Law in Further Support of Their Motion, with attached Exhibits 1-3.



Footnotes

Footnote 1: The case also involved a claim that defendants violated Labor Law § 196-d by representing to customers that a gratuity was included in the overall price of the dining cruise, with the plaintiffs claiming that the customers refrained from tipping because they believed the price they paid already included a gratuity (see id.). This aspect of World Yacht is not at issue here (see Class Representatives' Memorandum of Law in Support, n 4).

Footnote 2: More specifically, the record shows that Picard, Adams and Odom were paid between $12 and $14 per hour for banquet events. Thornton was paid between $9 and $11 per hour during her employment.

Footnote 3: According to John Mallozzi, Kruzinski's emails from 2011 and 2012 are the only sales emails from the Class Period that remain in the custody, possession or control of defendants.

Footnote 4: Plaintiffs also rely upon Picard's testimony, but he was not employed by defendants during the Pre-2011 Subclass period.

Footnote 5: For example, it is by no means clear that Picard's alleged statements to inquiring customers that "[he's] been taken care of" is a representation regarding the nature of the mandatory service charge.

Footnote 6: While plaintiffs argue in reply that the infrequency of customer gratuities is proof that customers believed the service charge to be a tip, the Court notes that the proof submitted by defendants in opposition to the motion does not purport to be exhaustive and, in any event, the motion record does not speak to gratuities left by customers in the form of cash.

Footnote 7: In reply, plaintiffs submit new, corrected spreadsheets.

Footnote 8: This is true even if, as plaintiffs argue, defendants could not have paid servers the tip minimum wage. Even an offset for payment of the regular minimum wage would appear to be substantial.